UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-559-2 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| GREGORY HAYSLETTE, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On April 24, 2023, defendant Gregory Hayslette ("Hayslette" or "defendant") was sentenced to a term of imprisonment of 18 months, following his guilty plea to conspiracy to solicit, receive, offer, and pay health care kickbacks, in violation of 18 U.S.C. § 371. (Doc. No. 364 (Judgment); *see* Doc. No. 187 (Plea Agreement); Minutes of Proceedings [non-document], 4/24/2024.) Now before the Court is defendant's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines. (Doc. No. 383 (Motion).) Plaintiff United States of America (the "government") filed an opposition to the motion. (Doc. No. 387 (Response).)

The Court employs a two-step approach to deciding whether to reduce a sentence based on a retroactive amendment to the federal sentencing guidelines. First, the Court must consider the scope of the reduction authorized by the amendment, and then it must consider whether such a reduction is warranted based on the factors set forth in 18 U.S.C. § 3553(a). *Dillon v. United States*, 560 U.S. 817, 826, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010) (citing § 3582(c)(2)).

In his motion, Hayslette asks the Court to reduce his sentence under Amendment 821, Part B, representing that he qualifies for a sentence reduction as a "zero-point offender." (*See* Doc. No. 383, at 1.) Part B of Amendment 821 creates a new U.S.S.G. § 4C1.1 that permits a two-level reduction for certain offenders with zero criminal history points.[1] U.S.S.G. § 4C1.1. The Amendment, effective November 1, 2023, was given retroactive effect, provided that any order reducing a term of imprisonment based on retroactive application of Amendment 821 have an effective date of February 1, 2024, or later. *See* U.S.S.G. § 1B1.10(d) and (e)(2).

At the time of sentencing, the Court calculated Hayslette's base offense level to be 6. (*See* Doc. No. 380-1 (Transcript from Sentencing Hearing) (Sealed), at 6; *see also* Doc. No. 255 (Revised PSR), at 19 ¶ 74.) The Court applied a 14-level increase because defendant was responsible for a loss amount of more than $1,341,129.46. (*See* Doc. No. 380-1, at 6; *see also* Doc. No. 255, at 19 ¶ 75.) An additional 2-level increase was applied because defendant was convicted of committing an offense involving a Federal Health Care Program and the loss amount was greater than $1,000,000.00. (*See* Doc. No. 380-1, at 6; *see also* Doc. No. 255, at 19 ¶ 76.) After an aggregate reduction of 7 levels was applied under the guidelines, the total offense level was 15. (*See* Doc. No. 380-1, at 6; *see also* Doc. No. 255, at 20 ¶¶ 82–83.) The Court determined that Hayslette had no criminal history points, resulting in a criminal history score of 0. (*See* Doc. No.

---

[1] Specifically, § 4C1.1 allows for the two-level downward adjustment provided the offender meets *all* of the following criteria: (1) the defendant did not receive any criminal history points; (2) the defendant did not receive an adjustment under § 3A1.4; (3) the defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the defendant did not personally cause substantial financial hardship; (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by § 2H1.1; (9) the defendant did not receive an adjustment under § 3A1.1; and (10) the defendant did not receive an adjustment under § 3B1.1 (aggravating role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848. *See* § 4C1.1(a)(1)–(10).

380-1, at 6; *see also* Doc. No. 255, at 20 ¶ 88.) With 0 criminal history points, Hayslette was a criminal history category I. (*See also* Doc. No. 255, at 20 ¶ 89.) The advisory guideline range at offense level 15, criminal history category I, was 18 to 24 months. (*See* Doc. No. 380-1, at 6; *see also* Doc. No. 255, at 26 ¶ 120.) While the government advocated for a high-end sentence based on defendant's role in the conspiracy and the damage the conspiracy inflicted on the government, patients and the public's trust in the medical profession, defendant sought a downward variance. The Court determined that a low-end guideline sentence would adequately effect the purposes of sentencing. (Doc. No. 380, at 71; *see* Doc. No. 364.)

According to Hayslette, his criminal history score of 0 now qualifies him for a 2 level reduction in his offense level under Part B of Amendment 821. (Doc. No. 383, at 1.) With a 2 level reduction, his offense level becomes 13. At offense level 13, criminal history category I, the advisory sentencing guideline range is now 12 to 18 months. Hayslette requests that his sentence be reduced to the lowest end of the new sentencing range, namely, 12 months (and one day) of imprisonment. (*Id*. at 6.)

The government agrees that Hayslette is eligible for a reduction under Part B as a zero-point offender, but it urges the Court to exercise its discretion in denying Hayslette's motion "because his original sentence is sufficient but not greater than necessary to satisfy the purposes and principles of sentencing." (Doc. No. 387, at 1, 5.) The government notes that, even with the benefit from the Amendment, Hayslette's sentence already falls within the new sentencing guideline range and argues that the facts still support the originally imposed sentence. (*Id*. at 4.) "While the law has changed," the government underscores that "the facts have not." (*Id*.) Moreover, the government observes that Hayslette was eligible to receive a 2-level upward

3

adjudgment for his leadership role in the conspiracy, but the government agreed not to pursue it. (*Id*. at 5 (citing Doc. No. 362 (Gov't Sentencing Memorandum), at 11).)[2] It is the government's position that Hayslette has already received all the sentencing consideration he is due.

The Court agrees with the parties that Hayslette qualifies for consideration of a sentence reduction under Part B as a zero-point offender. Having concluded the amended advisory guideline range of 12 to 18 months would have been applicable to defendant had the Amendment been in effect at the time of the initial sentencing, the Court proceeds to the second step of the analysis and considers whether such a reduction is warranted based on the factors set forth in § 3553(a). *Dillon*, 560 U.S. at 826 (citing § 3582(c)(2)).

Subject to the limits set forth in U.S.S.G. § 1B1.10(b), a court may consider all pertinent information in applying the § 3553(a) factors and determining whether and by how much to reduce a defendant's sentence. *Dillon*, 560 U.S. at 821–22; *see United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing 18 U.S.C. § 3553(a) and directing district courts to consider all relevant statutory sentencing factors). Section 3553(a), in addition to requiring consideration of the applicable guidelines and policy statements of the Sentencing Commission, requires the sentencing judge to consider the nature and circumstances of the offense and the history and characteristics of the defendant; and the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from future crimes of the

---

[2] At sentencing, the Court observed that defendant objected to the imposition of the 2-level increase under U.S.S.G. § 3B1.1(c). (Doc. No. 380, at 4.) Noting that the government was not pursuing the adjustment under § 3B1.1(c), the Court sustained the objection. (*Id*.) The Court made clear, however, that, in sustaining the objection, it was merely honoring the government's decision not to pursue the 2-level increase even though the government believed it was a "close call." (*Id*.)

defendant; and (4) to provide the defendant with needed educational or vocation training, medical care, or other correctional treatment in the most effective manner; and (5) the kinds of sentences available. *See* 18 U.S.C. § 3553(a).

The nature and circumstances of the health care fraud conspiracy were serious and continue to support a significant sentence. At all times relevant to the conspiracy, Hayslette was employed by a pharmaceutical company that manufactured a drug for treating Pseudobulbar Affect ("PBA"), known as Nuedexta. Hayslette and a co-defendant, Frank Mazzucco, paid kickbacks and other things of value to their co-conspirator physicians (Drs. Deepak Raheja and Bhupinder Sawhny) to promote and prescribe the drug to patients who were falsely diagnosed with PBA or for whom the drug was not indicated or even contraindicated. In exchange for increased prescriptions and sales, Hayslette and Mazzucco received company-based incentives and bonuses.

At the forefront of the conspiracy was Hayslette, who facilitated the fraud through a series of forged signatures of attendees at marketing dinners and signatures obtained under false pretenses, illegally written prescriptions, violations of patient privacy laws, recruitment of new doctors, and incentivization of unnecessary or excessive prescriptions. (Doc. No. 380, at 70–72.) As the Court explained at sentencing, "the conspiracy was really all about making money at the expense of the welfare of patients and the government programs, the Medicare and Medicaid programs, that were used to reimburse for prescribing the drug." (*Id*. at 66.) Beyond the financial impact to the government and its health care programs—which was significant—the damage to the unsuspecting patients who trusted their physicians to provide them with appropriate medical care free from undisclosed personal interest cannot be overstated. (*See id*. at 67.)

5

The history and characteristics of defendant reflect that Hayslette, age 47, enjoyed a "pretty good" childhood in a middle-class neighborhood with a close-knit family that experienced some financial struggles. (*See also* Doc. No. 255, at 21 ¶¶ 94–96.) The defendant is divorced with three adult children by his first wife and is currently engaged to another woman. (*See also id*. at 22 ¶¶ 98, 101.) His physical and mental health is good. (*See also id*. at 23 ¶¶ 103–05.) Defendant is a high school graduate and holds a bachelor's degree in finance. (*See also id*. at 23 ¶¶ 106–07.) He has enjoyed full-time employment in sales throughout his entire career, which includes the period of time in which he was involved in the underlying health care fraud conspiracy. (*See also id*. at 23–24 ¶¶ 108–112.) There is nothing in defendant's personal history and characteristics that now militates for a particularly light sentence.

The Court has also considered defendant's post-judgment behavior, including the programming he represents he has completed and is in the process of completing, as well as representations that he has served as a tutor for adult continuing education classes and currently assists his elderly bunkmate with his medications and other aspects of daily prison life. (*See* Doc. No. 383, at 7.) The Court has also considered the fact that Hayslette represents that he has fully satisfied the fines and restitution that were imposed at sentencing and has secured employment after his release. (*Id*.) But having again considered all the relevant factors under 18 U.S.C. § 3553(a), the Court concludes that a sentence reduction is not appropriate. At sentencing, the government argued in favor of a sentence at the high-end of the original guidelines range. The Court, however, determined that a custody sentence of 18 months correctly reflected the factors outlined in § 3553(a) without being overly punitive. In arriving at the relevant guideline range and sentence, the Court decided not to impose a 2-level adjustment, despite the fact that Hayslette

6

played a significant role in the fraud that propelled the conspiracy. The Court notes that Hayslette's 18-month custody sentence is still within his new advisory guideline range. Moreover, the Court finds that an 18-month custody term is sufficient, but not greater than necessary, to comply with the purposes of sentencing, and that a further reduction of Hayslette's sentence now would undermine the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence.

For the foregoing reasons, defendant's motion to reduce his sentence (Doc. No. 383) is DENIED.

**IT IS SO ORDERED**.

Dated: March 5, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**